IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLIE COUNTEE,

     Plaintiff,

vs.                                   No. CIV 96-1665 MV/RLP

HEATHER WILSON, DOUG MITCHELL,
JUDITH NOTTROTT, LORETTA CHAVEZ-HENRY,
and ROBERT CLEAVALL in their individual capacities,

     Defendants.


**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment, filed December 30, 1998 **[Doc. No. 73]**, Defendants Heather Wilson and Loretta Chavez Henry's Motion for Summary Judgment, filed January 15, 1999 **[Doc. No. 78]**, and Defendants' Motion to Exclude Plaintiff's Witnesses Dr. Childress and Luis Arellano, filed January 15, 1999 **[Doc. No. 82]**. The Court, having reviewed the pleadings, relevant law, and being otherwise fully informed finds that Defendants' motion for summary judgment is well taken and will be **granted in part**, and that Defendants Wilson and Loretta Chavez Henry's motion for summary judgment and Defendants' motion to exclude witnesses are not well taken and will be **denied**.

### Background

This is at its core a First Amendment case. In a November, 1996 two count complaint Plaintiff Charlie Countee, an African-American Juvenile Probation and Parole Officer ("JPPO") with the State of New Mexico, Children, Youth and Families Department, alleged that various defendants subjected him to constant harassment because of his association with and activities on behalf of the

American Federation of State, County, and Municipal Employees ("AFSCME"). Mr. Countee also alleged a conspiracy on the part of Defendants to retaliate, discriminate against, and punish employees for joining the union and for speaking out on purported improper and illegal employment practices, and brought claims under 42 U.S.C. § 1983 and 1985, looking to the First and Fourteenth Amendment as the source of his substantive rights.

In a related case, No. CIV 97-92, Mr. Countee filed a one count complaint on January 27, 1997 against Defendant Doug Mitchell, in his individual capacity, claiming disparate treatment on the basis of race. There Mr. Countee sought relief under 42 U.S.C. § 1981, § 1982, § 1983, the Fourteenth Amendment, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. On February 11, 1997 Senior Judge Mechem dismissed Count II of Mr. Countee's complaint in No. CIV 96-1665, which alleged a conspiracy pursuant to 42 U.S.C. § 1985. The Court consolidated the two cases on April 16, 1997, and on October 17, 1997 Judge Mechem dismissed the Title VII claims. What is left of the consolidated action, then, is one count against all Defendants claiming violations of Mr. Countee's First and Fourteenth Amendment rights pursuant to § 1983, and one count against Mr. Mitchell seeking vindication of Mr. Countee's equal protection rights and brought under §§ 1981, 1982, and 1983.

In an affidavit where he partially corrects his deposition testimony, Mr. Countee explains that he holds a bachelor of arts degree in social work and has been a full-time employee of CYFD or its predecessor agencies since 1982. Mr. Countee joined AFSCME in 1989, became a union steward in 1993, president of local 3153 in 1995, and has presented over 100 grievances for co-employees since 1993. Defendants Cleavall, Nottrott, and Mitchell at various times were his supervisors; Ms. Wilson and Ms. Chavez-Henry had higher level supervisory authority.

Detailing his allegations of retaliation for engaging in union activities, Mr. Countee alleges that despite his being assigned high caseloads at various postings and requesting assistance, Defendants never provided him with such. Mr. Countee also avers that when he applied for one of two supervisory positions in 1996, he was not selected as a finalist, nor indeed were any union members. One successful candidate was Mr. Tony Sanford, who had significantly less experience than Mr. Countee, who is white, and whom Mr. Countee had trained as a Juvenile Probation Officer. The other position was filled by Ms. Roberta Muro, who also had significantly less experience than Mr. Countee. In addition, Mr. Countee states that, in order to obtain a supervisory position, he joined CYFD liaison committees, but that after two years was removed from those committees in retaliation for his union activities.

In his deposition, Mr. Countee cites other alleged instances of retaliation. On one occasion Mr. Cleavall charged him with insubordination and being absent without leave when Mr. Countee, at the invitation of the Governor's representative, met with him to resolve some grievances. Mr. Countee grieved the charge, and Ms. Nottrott, Ms. Henry, and Ms. Wilson all upheld Mr. Cleavall. At the Governor's level, the reprimand was removed and Mr. Countee received an apology. On another occasion when Mr. Countee complained of his high case load at Rio Grande High School, he alleges Mr. Mitchell caused his physical fitness leave to be removed, and only reinstated it after Mr. Countee complained. Mr. Countee also alleges that his case load was kept deliberately high so that he would have less time to address union matters. Mr. Countee further testifies in his deposition that he received several unsatisfactory performance reviews as a direct result of his union activities, in that he was expected to report the hours he devoted to those activities but would not receive credit for those efforts in his appraisals. The Department subsequently rescinded the poor ratings after Mr.

Countee filed a grievance, which again went through three levels of review before being resolved by the Governor's representative. Mr. Countee claims that Ms. Chavez-Henry's denial of one of his grievances was retaliatory. He also alleges that Ms. Wilson distributed a confidential letter in which she berated him for his conduct of an employee meeting where union concerns were raised. Finally, Mr. Countee testified in his deposition that Ms. Nottrott, on the eve of her retirement, apologized to him for the harsh treatment to which he was subjected as a union leader, attributing it to Mr. Mitchell. Countee Deposition, Vol. 3 at 225-27.

In addition to his own deposition and affidavit, Mr. Countee has provided corroborating deposition testimony from other CYFD employees. Mr. David Ryan stated that Mr. Countee had a higher case load than any other JPPO in his office and that he was assigned as the sole JPPO in an area where three had worked before. Mr. Ryan, also a union activist, alleged that he had the second highest case load after Mr. Countee. Mr. Larry Marquez testified to personally having heard comments by Defendants Nottrott and Cleavall complaining of Mr. Countee's filing unnecessary grievances and spearheading the union movement. Mr. Robert Johnson testified that when he returned to work following a suspension Mr. Cleavall and another supervisor advised him to stay away from Mr. Countee and told him that leaving the union was the only way to advance at CYFD. Mr. Johnson stated that union members were not informed of the possibility of increased pay if assigned special case loads, and only found out after the fact when those employees who volunteered for the cases complained that pay increases would not be forthcoming. Mr. Johnson also testified to Mr. Countee's having the highest case load in his office, and stated that his supervisors under credited him for his work based on his union membership. Ms. Melissa Fischer-Pedraza testified that during the course of an interview with Mr. Cleavall where she sought a promotion, Mr. Cleavall stated he

had advised Tony Sanford that he "didn't have to take crap from those fuckers," referencing union members Ramon Chavez and Charlie Countee, and that he watched employees and knew with whom they associated. Ms. Fischer-Pedraza met with Ms. Wilson to complain of the remark. Ms. Fischer-Pedraza also testified that union members were treated differently, in that they were more closely supervised than non-union members, did not participate in special projects, and carried higher case loads.

In the first motion for summary judgment, Defendants argue issues of law and issues of fact. Addressing Mr. Countee's equal protection claim, Defendants aver that, as a matter of law, allegations of retaliation for union activities or for complaints of racial discrimination do not implicate equal protection guarantees. Defendants also maintain that even if the clause is properly invoked for these claims, the absence of clearly established law on the issue entitles them to qualified immunity. Finally, Defendants claim that Mr. Countee has both failed to show that discrimination based on his union activities occurred or that Mr. Mitchell discriminated against him because of his race.

In arguing in favor of summary judgment on Mr. Countee's First Amendment claims, Defendants state that Mr. Countee has failed to show adverse employment action, and that for one claim which could be construed as adverse action, the failure of Defendants to promote Mr. Countee, Mr. Countee has failed to show a connection between his speech and the employment decision. Moreover, Defendants contend that Mr. Countee's speech, dealing only with personnel issues within CYFD, did not involve matters of public concern, but that even if the Court concludes otherwise, they are entitled to qualified immunity.

In the second motion for summary judgment, that of Defendants Heather Wilson and Loretta Chavez-Henry, Ms. Wilson and Ms. Chavez-Henry focus on their relationship with Mr. Countee.

Arguing that Mr. Countee has failed to show any deliberate acts that they, as his high-level supervisors, took to deprive him of constitutional rights, Ms. Wilson and Ms. Chavez-Henry ask the Court to dismiss the claims against them. In addition, both Defendants raise the defense of qualified immunity. Ms. Wilson claims that Mr. Countee has failed to show that the distribution of a confidential letter, even if it can be attributed to her, does not violate clearly established First Amendment law. Likewise Ms. Chavez-Henry states that clearly established law does not prevent her from denying Mr. Countee's grievance on appeal.

In their motion to exclude the testimony of expert witness Dr. Childress and union president Luis Arellano, Defendants essentially claim unfair surprise. Defendants maintain that Ms. Countee listed those two witnesses only after the close of discovery, and that they have not had the opportunity to depose Doctor Childress or examine Mr. Countee's medical records. Defendants also allege that although they sought to depose Mr. Arellano, he wrongfully ignored a subpoena and failed to appear at the deposition.

**Discussion**

I.    The motions for summary judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Under this standard, the moving party initially carries the burden of pointing out to the trial court that there is an absence of evidence to support the nonmoving party's case, although the moving party "need not affirmatively negate the nonmovant's claim in order to obtain summary judgment." *Allen v. Muskogee, Oklahoma*, 119 F.3d 837, 840 (10th Cir. 1997),

*cert. denied*, 118 S.Ct. 1165 (1998), *citing Celotex v. Catrett*, 477 U.S. 317, 322-23, 325 (1986). The Court examines the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party, *Allen*, 119 F.3d at 839-40, and materiality of facts in dispute, if any, is dependent upon the substantive law, *id.* at 839, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the movant has met this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show, through affidavits, depositions, answers to interrogatories, and the like that there is a genuine issue for trial. *Allen*, 119 F.3d at 841, *citing Celotex*, 477 U.S. at 324; *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1988). Conclusory allegations are not enough, *see Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-72 (10th Cir. 1998), but summary judgment "is warranted only if the uncontroverted material facts establish that the moving party is entitled to judgment as a matter of law." *David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996), *cert. denied*, 118 S.Ct. 157 (1997).

A.      Defendants' motion for summary judgment [Doc. No. 73]

1. The equal protection claims

Turning first to this motion, the Court agrees that for all Defendants but Mr. Mitchell, originally sued separately, Mr. Countee has stated claims that only implicate the First Amendment. Mr. Countee's complaint, read to its four corners, contains no accusations of race-based discrimination, and instead solely mentions discrimination and retaliation related to his union activities. Moreover, in dismissing Mr. Countee's conspiracy claim the Court already has expressly recognized that Mr. Countee has failed to state an allegation of class based or racial discriminatory animus. *Countee v. Wilson, et al.*, No. CIV 96-1665, slip op. at 4, 5 (D. N.M. Feb. 11, 1997).

Therefore, the issue now is whether the Equal Protection Clause can serve as the source of a right to engage in union activities. Defendants cite two cases directly on point, *Thompson v. City of Starkville, Miss.*, 901 F.2d 456 (5th Cir. 1990) and *Vukadinovich v. Bartels*, 853 F.2d 1387 (7th Cir. 1988), where in each instance a court held that in allegations of retaliation for the exercise of First Amendment rights, absent the usual equal protection classifications the Fourteenth Amendment offers no relief. *Compare Thompson*, 901 F.2d at 468 *with Vukadinovich*, 853 F.2d at 1391-92. These cases are persuasive.

In response Mr. Countee mentions a string of cases, *Key v. Rutherford*, 645 F.2d 880 (10th Cir. 1981); *Morfin v. Albuquerque Public Schools*, 906 F.2d 1434 (10th Cir. 1990); *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990); and *McCabe v. Sharrett*, 12 F.3d 1558 (11th Cir. 1994), alleging their support for the proposition that the Fourteenth Amendment is a concomitant source of the right to be free from retaliation for speaking out. Mr. Countee's reference to these cases is disingenuous, however, for a close reading of all fails to reveal them for other than what they are: decisions examining rights of speech in a First Amendment context.

Mr. Countee does cite more properly to *Gehl Group v. Koby*, 63 F.3d 1528 (10th Cir. 1995) to support his contention that he has correctly invoked the Fourteenth Amendment. In *Gehl* police fraternal organizations and their fund raiser brought a civil rights action against the City of Boulder and various of its officials for wrongful criminal prosecution that followed solicitation efforts, raising in part an equal protection claim. *Id.* at 1530. In addressing that claim, the court characterized it as "essentially one for selective prosecution," *id.* at 1538, and agreed that an equal protection cause of action could exist where city officials apply an ordinance differently to similarly situated groups. *Id.*, *quoting Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 94-95 (1972). Yet the *Gehl* court

discussed the claim only in terms of criminal prosecution, and Mr. Countee has not explained how or why this Court should take the present case, essentially a classic First Amendment employment dispute, out of the context of the long line of cases analyzing First Amendment rights in such situations, *see, e.g., Pickering v. Board of Education*, 391 U.S. 563 (1968); *Connick v. Myers*, 461 U.S. 138 (1983), and shoehorn it into an equal protection framework. Dictum in *Vukadinovich*, moreover, shows at least one appellate panel's unease with the line of argument Mr. Countee is taking. *Vukadinovich*, 853 F.2d at 1392 n.8.

Notwithstanding that equal protection can not be part of Mr. Countee's claim with respect to all but Mr. Mitchell, the Court finds in part that there are genuine issues of material fact as to any race-based animus on the part of Mr. Mitchell that preclude summary judgment. Defendants allege that Mr. Countee has not offered any evidence that Mr. Mitchell treated him differently based on his race, separating Mr. Countee's allegations into his failure to be promoted and other conduct alleged on the part of Mr. Mitchell, then arguing that in no instance is there sufficient evidence to survive a summary judgment motion. The Court disagrees.

To prove a disparate treatment claim under § 1983 a plaintiff may resort to the burden shifting approach first set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Randle v. City of Aurora*, 69 F.3d 441, 450 (10th Cir. 1995); *Helland v. South Bend Community School Corp.*, 93 F.3d 327, 329 (7th Cir. 1996).

Under the well-worn *McDonnell Douglas* standard, a plaintiff must first

> carry the initial burden of establishing a prima facie case of discrimination. Once a prima facie case of discrimination is made out, the burden of production shifts to the defendant to articulate some legitimate nondiscriminatory reason for its action. If the defendant does so, the plaintiff must be given the opportunity to show by a preponderance of the evidence that the reason offered by the defendant is mere

pretext.

*Ramsey v. City and County of Denver*, 907 F.2d 1004, 1007 (10th Cir. 1990).

The proof necessary to establish a prima facie case is not onerous. *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1038 (10th Cir. 1993), *citing Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In the usual employment context, where a claim typically is for failure to hire or promote, a plaintiff must first prove that he is a member of a protected class, applied for and was qualified for a position, was rejected despite being qualified, and that the position remained open or was filled by someone not in the plaintiff's class. *Randle*, 69 F.3d at 451 n.13. This framework is a flexible one, however, that "may be modified to relate to different factual situations." *Id.*, *see also Shapolia*, 992 F.2d at 1037. Here Mr. Countee urges the Court, because the gravamen of his complaint focuses on disparate treatment that includes harassment as well as failure to promote, to apply a different standard for the claims not involving failure to promote. The Court agrees under these circumstances Mr. Countee need only, to meet his prima facie burden, show that he is a member of the protected class and that Mr. Mitchell took adverse actions against him that he did not take with respect to his subordinates that were not in Mr. Countee's class. This Mr. Countee had done.

Mr. Countee has met his prima facie burden under *Mc Donnell Douglas* for his harassment claim, but not for his failure to promote claim. It is undisputed that Mr. Countee is African-American. For the harassment claims, Mr. Countee has testified in his deposition to several instances of adverse action he believes were racially motivated, one involving his purchase of flowers on Department time on Secretary's day, one involving his going out in the field with another officer rather than alone, one involving a non-minority employee's being left in charge of the office for less

10

than a day despite Mr. Countee's seniority, one involving a dispute about the removal of a reprimand from Mr. Countee's personnel file where a non-minority had a reprimand removed sooner than for Mr. Countee, and one instance where Mr. Countee's physical fitness was removed, allegedly at Mr. Mitchell's direction, when he complained of having too high a case load. While these events may constitute evidence of racially motivated discrimination, they could also easily be construed as evidence of animus based on Mr. Countee's union activities.[1] Nevertheless, the Court recognizes that these allegations present genuine issues of fact as to discriminatory animus.

However, Mr. Countee has not met his prima facie burden to show that Mr. Mitchell denied him advancement based on race. Mr. Countee has shown that he applied for a promotion and that two lesser experienced co-workers were successful, one a Hispanic woman, Roberta Muro, and one an Anglo man, Tony Sanford. It is undisputed that Ms. Muro had significantly less seniority or experience than Mr. Countee. For Mr. Sanford, Defendants make much of the fact that he had a doctorate degree, while Mr. Countee only holds a bachelor's in social work. Yet Mr. Sanford's doctorate is not related to social work, it is in physical education. Moreover, Defendants do not dispute that Mr. Sanford had significantly less on-the-job experience than Mr. Countee. Where Mr. Countee's prima facie case founders, however, is in his lack of allegation that Mr. Mitchell had anything to do with the selection process. In his deposition, Mr. Countee stated that Defendant Cleavall was on the promotion selection committee, but that he did not know if Mr. Mitchell had any

---

[1] Mr. Countee also testified in his deposition that Mr. Mitchell showed race-based animus on two separate occasions, once to a Hispanic employee who allegedly had trouble speaking English, and once to a non-minority employee who, having grown up in a low-income neighborhood among minorities, had "ghetto slur and ghetto behavior." Countee Deposition at 57. While "[a]s a general rule, the testimony of other employees about their treatment by [a] defendant is relevant to the issue of the employer's discriminatory intent," *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990), Mr. Countee did not present the testimony of those employees directly, he merely repeated hearsay, and has not shown how such hearsay would otherwise be admissible. *See Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998).

involvement in the selection process. Moreover, Mr. Countee testified that Mr. Mitchell tried to give him a chance to be a supervisor, actively recruiting him for the supervisory post, but that the effort failed when it became clear that Mr. Countee would not abandon his pro-union stand. In his affidavit, Mr. Countee states that he did not apply for promotion on several occasions when Mr. Mitchell was his supervisor, implying that such application would have been useless, but then goes on to say that "[i]t was made clear to [him] by Defendant Mitchell he would not promote *any union member* to a supervisory position." Countee Affidavit at 1-2 (emphasis added). Thus, the animus of which Mr. Countee complains in his lack of promotion goes to his First Amendment claim, and not his equal protection claim against Mr. Mitchell.

### 2. The First Amendment claims

Although the time is long past when a public employee had to choose between staying employed and enjoying First Amendment rights, *see Connick v. Myers*, 461 U.S. 138, 143-144 (1983), a public employee's freedom of speech is not unlimited under modern jurisprudence. Courts must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568.

The proof required for a First Amendment retaliation claim is in four parts, with the first two being legal rulings and the other two being factual findings. *Wulf v. City of Wichita*, 883 F.2d 842, 856-57 (10th Cir. 1989); *Dill v. City of Edmond, Okl.*, 155 F.3d 1193, 1201-02 (10th Cir. 1998). The questions of law are whether an employee's speech involves a matter of public concern, and if so, whether the employee's interests in commenting on such matters, balanced "against the interests

of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," *Dill*, 155 F.3d at 1201, *quoting Pickering*, 391 U.S. at 568, outweigh the interests of the employer. *Dill*, 155 F.3d at 1201. If a court concludes that the employee's interests tip the balance, then a factfinder must consider whether a plaintiff has proven "that the speech was a substantial factor or a motivating factor in the detrimental employment decision." *Dill*, 155 F.2d at 1202, *quoting Gardetto v. Mason*, 100 F.3d 803, 811 (10th Cir. 1996). If a plaintiff "makes such a showing, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." *Dill*, 155 F.3d at 1202, *citing Gardetto*, 100 F.3d at 811.

The first step of an analysis is determining whether the speech at issue can be "fairly characterized as constituting speech on a matter of public concern." *Connick*, 461 U.S. at 146; *see also David*, 101 F.3d at 1355. Considering an employee's motive in speaking out, courts must weigh the content, form and context of the speech in light of the whole record before them. *David*, 101 F.3d at 1355.

Under this standard, the Court finds that Mr. Countee has sufficiently shown that his speech is on a matter of public concern. Defendants portray this speech as involving merely employment disputes and not being actionable under the First Amendment. *See Workman v. Jordan*, 32 F.3d 475, 482-83 (10th Cir. 1994). Drawing the thin line that separates speech which touches on matters of public concern from that dealing only with personal employment matters, *see id.* at 483, *quoting Schalk v. Gallemore*, 906 F.2d 491, 495 (10th Cir. 1990), the Court disagrees. Mr. Countee's speech in this case, unlike the speech in *Workman*, predominantly involved his filing grievances for other employees. *Compare Workman*, 32 F.3d at 482-83. Moreover, "even speech that focuses on internal

employment conditions and is made in the context of a personal dispute may be regarded as pertaining to a matter of public concern if it addresses important constitutional rights which society at large has an interest in protecting," *Woodward v. City of Worland*, 977 F.2d 1392, 1404 (10th Cir. 1992 ). The whole record before the Court so far reveals that this case involves the efforts of a union local, led by Mr. Countee, to press employment matters important to its members, and the accompanying negative reaction from management. Mr. Countee has not limited that speech to purely personal matters, and in light of the existing right of a public employee to "associate with the union of his or her choice," *Morfin*, 906 F.2d at 1439, Mr. Countee's speech addresses important constitutional rights which society at large has an interest in protecting. Therefore, his speech touched on matters of public concern.

Going on to the second step of the *Pickering* analysis, the Court finds that Defendants have not shown that their interests outweigh those of Mr. Countee. Indeed, the only evidence this Court has of internal friction within CYFD was provided by Mr. Countee himself, in the testimony of Mr. Marquez, who stated that he personally heard Defendants Nottrott and Cleavall voice their displeasure at the number of unnecessary grievances Mr. Countee was filing. Mr. Manuel Vildisol also testified on behalf of Mr. Countee, stating that Mr. Cleavall occasionally complained about the large number of grievances Mr. Countee filed. Vildisol Deposition at 28-30. Absent evidence from Defendants that explains the extent of the workplace disruption caused by Mr. Countee's activities, the Court must conclude in Mr. Countee's favor in balancing interests.

Defendants claim that Mr. Countee has not presented evidence that First Amendment protected conduct was a motivating factor in his being denied a promotion. On the contrary, the Court finds ample disputes of material fact on this issue. Mr. Countee himself has testified that Mr.

Sanford was selected for an acting supervisory position in order to provide him with experience that would weigh in his favor in the selection of a permanent supervisor, and that Defendant Nottrott denied him the same opportunity. Mr. Countee also has testified that Mr. Mitchell gave up on recruiting him for the position, stating "I don't think we'll ever see eye to eye, Charlie." Mr. Countee has alleged that no union members were selected to be interviewed for the promotion. Defendant Cleavall was on the selection committee for the promotion, and Mr. Countee has provided corroborating evidence that Defendants showed animosity toward his union activities. Mr. Marquez testified in a deposition that Defendants Nottrott and Cleavall commented on Mr. Countee's filing unnecessary grievances, spearheading the union movement, and generally disapproving of those activities. Mr. Johnson stated that Defendants Mitchell and Cleavall asked him to stay away from Mr. Countee and told him that leaving the union was the only way to advance in CYFD. Ms. Fischer-Pedraza testified that in a job interview Mr. Cleavall also expressed displeasure at Mr. Countee's union activities. In sum, there are ample genuine disputes of material fact on the issue of whether Mr. Countee's union activities were a motivating factor in his being denied a promotion.

Defendants also present a no-harm, no-foul argument to the Court. Because they rescinded all the reprimands or adverse actions against Mr. Countee Defendants advance that Mr. Countee has not demonstrated, save for his claim of failure to promote, adverse employment action that can as a matter of law constitute harassment or retaliation. The Court flatly disagrees.

There is incomplete support for Defendants' claim in *Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998), *petition for cert. filed* (Feb. 4, 1999). There the court held that verbal reprimands of a police officer, allegedly in retaliation for the exercise of her First Amendment rights, did not constitute adverse employment action because they were nothing more than mere criticisms

and had been rescinded through internal procedures. *Id.* at 377. The *Benningfield* court thus drew

a line between actionable reprimands and unactionable criticisms. Mr. Countee has received written

reprimands, however, and the Ninth Circuit case of *Hashimoto v. Dalton*, 118 F.3d 671 (9th Cir.

1997), *cert. denied*, 118 S.Ct. 1803 (1998), supports the proposition that adverse action, even if

rescinded, is actionable. *Hashimoto* involved the retaliatory dissemination of a negative employment

reference where the trial court found that even absent the reference, the plaintiff would not have been

hired by a subsequent employer. *Id.* at 674. Rejecting a no-harm no-foul approach similar to one

advanced by Defendants here, *Hashimoto* held, in the Title VII context, that even where no harm

results a retaliatory act is actionable, for it by itself can "have a deleterious effect on the exercise of

these [Title VII] rights by others." *Id.* at 676, *quoting Garcia v. Lawn*, 805 F.2d 1400, 1405 (9th

Cir. 1986).

Defendants have not argued, as they can not, that the reprimands of Mr. Countee absent their

recission do not rise to the level of being adverse employment actions. In *Morfin* the Tenth Circuit

long ago rejected the position "that only adverse employment decisions, such as termination,

suspension, or transfer, in retaliation for constitutionally protected conduct are illegal." *Morfin*, 906

F.2d at 1437 n.3. Indeed, "'[a]dverse employment action' is broadly defined and as a matter of law

includes not only discharges, but also demotions, refusals to hire, refusals to promote, and

reprimands." *McCabe*, 12 F.3d at 1563. The fact that the grieving of those reprimands, sometimes

to the highest level possible within his agency, exonerated Mr. Countee does not change the character

of the disciplinary action. If it did, Mr. Countee's efforts at clearing his record would add the ironic

twist of counting against him when he later sought to vindicate his First Amendment rights. The

logical extension of Defendants' argument is an evisceration of constitutional guarantees, for to heed

it would allow an employer to commit constitutional torts, correct them under pressure from an aggrieved party, and successfully defend by claiming to have done no harm.

Through their own admissions, Defendants point out that Mr. Countee has been subjected to numerous disciplinary measures and other instances where he has felt compelled to lodge a grievance. Defendants once charged Mr. Countee with being absent without leave when he attended an impromptu discussion, at the behest of the Governor's representative, to resolve disputes. When Mr. Countee complained of his high case load, rather than alleviate the situation Defendants deprived him of a two hour per week physical fitness leave. Mr. Countee has alleged that his high case load was a purposeful attempt to discourage him from taking time to address union matters. Defendants insisted that Mr. Countee report the time he devoted to union activities, yet refused to credit that time in his performance appraisals. As a result, Mr. Countee received unsatisfactory performance ratings, which were removed only after several levels of grievance and a concerted effort on the part of Mr. Countee to galvanize the state's union members to lobby for his cause. Thus, the alleged harassment of which Mr. Countee complains and which he had to administratively redress is not so trivial that the Court can conclude as a matter of law that the exercise of his First Amendment rights were not deterred. *See, e.g., Allen v. Scribner*, 812 F.2d 426, 434 n.17 (9th Cir. 1987); *amended by* 828 F.2d 1445 (9th Cir. 1987); *Pieczynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989).

Lastly, Defendants assert that qualified immunity protects them from litigating Mr. Countee's First Amendment claims. Specifically, Defendants claim that Mr. Countee can point to no Supreme Court or Tenth Circuit decision holding that speech during a personal grievance constitutes a matter of public concern. Defendants attempt to define the issues in this case out of existence. Unlike in *Workman*, Mr. Countee has not brought grievances involving only personal displeasure with his

employment, but rather complains of his supervisors' retaliating against him for his union activities, which included filing grievances on behalf of other union members in his local. Qualified immunity does not lie. *See Morfin*, 906 F.2d at 1439.

> B. Defendants Heather Wilson and Loretta Chavez-Henry's motion for summary judgment [Doc. No. 78]

The focus of this motion is whether as supervisors Defendants Wilson and Loretta Chavez-Henry can avoid liability as a matter of law. Defendants correctly point out that in a § 1983 action, supervisory liability may not be predicated on negligence. *Woodward*, 977 F.2d at 1399. Instead, a plaintiff must show "a deliberate, intentional act by the supervisor to violate constitutional rights." *Id.* Defendants argue here that Mr. Countee has not shown such a factual basis for deliberate actions by Ms. Wilson and Ms. Chavez-Henry.

Mr. Countee maintains that the conduct of both Ms. Wilson and Ms. Chavez-Henry show a dispute of material fact as to their intent to violate his First Amendment rights. Specifically, Mr. Countee is aggrieved that a copy of a letter from Ms. Wilson dated May 25, 1995, marked confidential, was widely distributed in his office before he even received the original in the mail. Mr. Countee considers the letter defamatory and imputes its distribution to Ms. Wilson.[2] Mr. Countee also complains in his deposition of Ms. Chavez-Henry's denial of the appeal of some of his grievances. Countee Deposition, Vol. 3 at 193-94. The essential focus of Mr. Countee's charge

---

[2] The letter in essence explains Ms. Wilson's displeasure at having an employee meeting which she attended become, without her prior knowledge, a forum for union complaints. Ms. Wilson asked her staff to investigate this change of agenda and explained the results of her investigation to Mr. Countee. Whether this letter is defamatory or indeed whether Ms. Wilson requested its distribution the Court need not decide in addressing the motion.

against Defendants Wilson and Chavez-Henry, however, is that despite having actual knowledge of harassment and retaliation directed at Mr. Countee they allowed their subordinates to continue in their unconstitutional conduct.

The Court agrees that the circulation of Ms. Wilson's letter, even assuming Ms. Wilson is responsible, and the denial of a grievance by Ms. Chavez-Henry taken as isolated incidents may not meet the threshold requirement of showing deliberate intent to violate Mr. Countee's constitutional rights. *See, e.g., Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Seen in the broader context of a pattern of alleged harassment and retaliation for advancing union issues, however, such conduct may contribute to meeting that intent requirement. Moreover, § 1983 liability can attach to a supervisor if that supervisor consciously acquiesces in the conduct of her subordinates. *Woodward*, 977 F.2d at 1400. In addition to his own claims that Ms. Wilson and Ms. Chavez-Henry were fully aware and condoned discrimination against the union and its members, Mr. Countee has presented sufficient other evidence that creates a genuine issue of material fact as to conscious acquiescence. Ms. Fischer-Pedraza has testified that she personally met with Ms. Wilson to discuss harassment of the union. Fischer-Pedraza Deposition at 9, 10. According to Mr. Countee, Ms. Nottrott met with him and personally apologized for the ongoing harassment of him and the union. Mr. Vildisol testified to meeting with Ms. Wilson and Ms. Chavez-Henry to discuss discrimination against union members. Vildisol Deposition at 19. There is thus sufficient evidence to create genuine issues of material fact going to Ms. Wilson and Ms. Chavez-Henry's knowledge of and conscious acquiescence in alleged anti-union activities.

Defendants point out that Ms. Wilson took affirmative steps to investigate the allegations of retaliation and discrimination based on union membership, concluding that they were groundless. Yet

this contention only highlights the factual disputes surrounding this issue, counseling for a denial of this part of the summary judgment motion, since Mr. Countee has presented evidence in disagreement with that assessment. Moreover, in a case discussing the closely related concept of municipal liability for failure to train its police officers, the Supreme Court has implied that the resolution of a deliberate indifference claim is inherently a factual matter, *Canton v. Harris*, 489 U.S. 378, 391 (1989). Summary judgment for Defendants on this claim is not appropriate.

Both Ms. Wilson and Ms. Chavez-Henry insist that, even if the court denies the substantive part of their motion, the Court should dismiss them from this action on the basis of qualified immunity. Defendants argue that the circulation of a letter or the denial of a grievance are not acts that are in violation of clearly established law. As in the other Defendants' motion for summary judgment, these Defendants attempt to define the issue out of existence and impose specificity to an extent the law does not require. The issue is not whether Ms. Wilson or Ms. Chavez-Henry had a right to deny a grievance on its substantive merits or disagree with Mr. Countee's handling of an employee meeting, which they undeniably did, but whether they acted with the deliberate intent to violate Mr. Countee's constitutional rights to associate with a union or file grievances, or acquiesced in those alleged violations. Recognizing that in evaluating whether a right is clearly established, a court must not confine itself to "generalized legal principles," *Medina v. City and County of Denver*, 960 F.2d 1493, 1497 (10th Cir. 1992), the Court examines sufficiently analogous factual settings to rule on the qualified immunity claim. *Id.*

For this the Court need search no farther than *Morfin*. In *Morfin* two school teachers, both public employees, alleged in part that the defendants had retaliated against them for filing grievances and belonging to a union. *Morfin* 906 F.2d at 1438. The Tenth Circuit plainly stated that the First

Amendment right of public employees to participate in unions and file grievances was clearly established for qualified immunity purposes. *Id.* at 1439. A reasonable supervisor would have been on notice at least as far back as 1990 in the Tenth Circuit, therefore, that retaliation for association with a union or for the filing of grievances was actionable.

II.     The motion to exclude Plaintiff's witnesses

In this motion the parties dispute whether, in light of multiple extensions of discovery deadlines, Mr. Countee has failed to disclose in a timely manner that he would call Dr. Childress and Mr. Arellano. Defendants claim unfair surprise, and Mr. Countee responds that Defendants had ample notice. In the interests of justice and to obtain a full hearing of the issues in this case, the Court will not exclude the testimony of those two witnesses. Because Defendants have not been able to obtain depositions, however, the Court will allow Defendants, if they so choose, to depose with subpoenas duces tecum if necessary these witnesses no later than March 31, 1999. Mr. Countee is to cooperate to the fullest extent possible in scheduling these depositions and in providing the medical records in Dr. Childress' possession to Defendants in order to allow Defendants a meaningful opportunity to review those records prior to a deposition. Moreover, although Defendants have not sought sanctions, the Court has noted that Mr. Arellano has failed to appear for his deposition, giving only minimal notice. The Court would not look favorably to dilatory tactics by that witness.

THEREFORE,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment, filed December 30, 1998 **[Doc. No. 73]** be, and hereby is, **granted in part**.

IT IS FURTHER ORDERED that Defendants Heather Wilson and Loretta Chavez Henry's

Motion for Summary Judgment, filed January 15, 1999 **[Doc. No. 78]**, and Defendants' Motion to Exclude Plaintiff's Witnesses Dr. Childress and Luis Arellano, filed January 15, 1999 **[Doc. No. 82]** be, and hereby are, **denied**.

IT IS FURTHER ORDERED that Defendants be, and hereby are, allowed to depose Plaintiff's witnesses Dr. Childress and Mr. Luis Arellano no later than March 31, 1999.


_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE

March 12, 1999


<u>Counsel for Plaintiff</u>

R. Galen Reimer

<u>Counsel for Defendants</u>

Paula I. Forney
Ned S. Fuller
Mark D. Jarmie